Ryan *v.* MacDonald et al., (Wiley, Exr., Appellant).

Argued October 13, 1942.

Before KELLER, P. J., CUNNINGHAM, BALD-RIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Hamilton C. Connor, Jr.,* with him *John B. H. Carter, Jr., Evans, Bayard & Frick* and *Ballard, Spahr, Andrews & Ingersoll,* for appellant.

*Charles H. Schreyer,* with him *John J. Sullivan,* for appellee.

OPINION BY KENWORTHEY, J., February 26, 1943:

In the search for the true facts of this case—how and under what circumstances appellee became possessed of the stock certificates—the lower court was, and now this court is, involved in a game of hide-and-seek. Knowledge of the facts with any degree of certainty would require a clairvoyance which, unfortunately, we do not possess. Appellant-executor effectively closed the mouth of appellee by invoking the 'dead-man's rule' of the Act of 1887[1] and then offered no evidence. This is not to be regarded as a criticism of counsel, but is a manifestation of one of the many absurdities of the Act.

Frederick H. Groschup died July 8, 1939. Four days later, appellee delivered for sale for her account to MacDonald & Co., stockbrokers and defendants in the interpleader, certain stock certificates registered in the name of decedent. After letters testamentary were issued to appellant on July 19, 1939, he notified MacDonald & Co. that the certificates were delivered by appellee without authority and that they were the property of decedent. MacDonald & Co. filed a petition for interpleader and paid the money into court.

The case was tried before WINNET, J., without a jury. He directed that appellee had the burden of proof. She showed by the testimony of a notary public that on June 30, 1939, she and decedent appeared at the office of the notary, and that, in the presence of the notary, decedent executed the assignments on the back of the certificates. The notary was unable to state whether, at that time, appellee's name appeared in the assignments as assignee,[2] and he was unable to say whether,

---

[1] Act of May 23, 1887 P. L. 158, §5(e), 28 PS 322.

[2] When delivered to MacDonald & Co., appellee's name appeared on the certificate as assignee but not in decedent's handwriting, and there was no evidence as to when the insertion occurred.

when they left his office, the certificates were in the possession of appellee or whether they were in the possession of decedent.

There was no evidence of the relationship between appellee and decedent. The above is a recital of all relevant evidence in the case except that while appellee was on the witness stand, she was permitted, *over appellant's objection,* to state that the certificates had been in her possession since June 30, 1939. Since the purpose of this last-mentioned evidence tends to prove delivery of the certificates by decedent in his lifetime, this admission was clearly prohibited by the Act of 1887 and must, therefore, be disregarded.

The trial judge was not satisfied an executed gift to appellee had been proven and found for appellant. Three judges of the municipal court sitting as a court en banc, the trial judge dissenting, entered judgment n. o. v. for appellee. This appeal followed.

It is well settled that where it is shown property was owned by a decedent within a short time prior to his death, the burden is on the person who claims a change of ownership to prove it. This is an exception to the general rule that proof of possession of a negotiable instrument or chose in action creates a presumption of ownership. *Robinson v. Hodgson,* 73 Pa. 202. Strictly speaking, the trial judge should have imposed the *initial* burden on appellant to prove the fact of ownership in decedent. But his ownership, at least up to June 30th, is clearly admitted and this error was harmless. And the burden of proof which then shifted to appellee to prove the transfer of title is not governed by a *procedural* rule as the majority of the court below thought; it is a *substantive* rule of law. *Henes v. McGovern,* 317 Pa. 302, 176 A. 503. We shall not review all of the cases. A large number of them are set forth in a footnote in the opinion of Judge WINNET

and the rule is discussed at length by Mr. Justice MAXEY in *Henes v. McGovern*, supra. Quoting from *Maxler v. Hawk*, 233 Pa. 316, 323, 82 A. 251, he said at page 306: "The complaint ...... is that the court erred in instructing the jury that the burden was on the defendant to satisfy the jury that the bonds were actually given to him by the decedent with the intention that he should have title to them. The essential elements of a gift inter vivos are an intention to give and such actual or constructive delivery of the thing as places the absolute control or dominion over the gift in the donee ...... The learned judge might have gone farther than he did and told the jury that the proof of the gift should be clear and convincing." In the Henes case, the plaintiff contended that defendant's decedent had, a short time before his death, made a gift to her of $6,000 in cash. She offered evidence that a short time before his death decedent, in the presence of her three adult daughters by a former marriage, withdrew fifteen bundles of money from beneath the pillow of his bed, and handed the packages to her, saying: "This is a gift for you. You take it. You have been good to me. See that nobody else gets a penny of it." There was also evidence that the next day the decedent told his physician that he had given the money to plaintiff. This testimony was not directly controverted. The issue was tried before a judge and jury which rendered a verdict for the defendant. In the course of his charge, the judge instructed the jury that the plaintiff had the burden of proof. Refusing to grant a new trial, the Supreme Court said: "Plaintiff was given opportunity to prove her contention that decedent McGovern gave her the sum of money in question. The jury apparently did not give credence to the testimony of her witnesses. The credibility of these witnesses was for the jury ...... The jurors were

by law the weighers of her proof and they evidently found it wanting."

Since appellee's name appeared on the stock certificates as assignee when she delivered them to MacDonald & Co., and since the execution of the assignments seems to be conceded, appellee's burden, specifically, was to prove either (a) the delivery of the certificates to her, or at least (b) that her name was inserted as assignee by decedent or someone under his direction from which, together with other evidence, the delivery might be inferred. We have indicated there was no direct evidence of either of these facts. And although the trial judge might have been justified in inferring the delivery and intention to make the gift from the proof that decedent and appellee had appeared together at the notary's office when the assignments were executed, coupled with evidence she was in possession of the certificates four days after decedent's death, he was not bound to do so. The question was one for him as the trier of the facts; his finding that there had been no gift was conclusive on the court en banc as it is on us. *Jann v. Linton's Lunch,* 150 Pa. Superior Ct. 653, 29 A. (2d) 219. And since the court en banc had no power to make findings of fact but in passing upon the motion for judgment n. o. v. was bound to act as it would in reviewing the verdict of a jury, its order was, in our opinion, erroneous. Ibid.

Since it appears all the available evidence has been produced, the judgment is reversed and entered for appellant on the finding of the trial judge.