In re Trust under Agreement of John H. WARE, III, Dated 12/28/1976.

Appeal of Wachovia Bank, National Association, Trustee (F/K/A First Union National Bank) (Respondent Below), Cross–Appellee/Appellant.

In re Trust under Agreement of John H. Ware, III, Dated 1/23/1991.

In re Trust under Agreement of John H. Ware, III, Dated 12/27/1982.

In re Trust under Agreement of Marian S. Ware, Dated 1/24/1990.

In re Residuary Trust under Will of Clara E. Ware, Deceased.

In re Trust under Section Fifth Paragraph B of Will of John H. Ware, III, Deceased.

In re Residuary Trust under Will of John Ware, Deceased.

In re Trust under Agreement of John H. Ware, 3rd, Dated December 28, 1976.

Appeal of John H. Ware, IV.

In re Trust under Agreement of John H. Ware, 3rd, Dated January 23, 1991.

In re Trust under Agreement of John H. Ware, 3rd, Dated December 27, 1982.

In re Trust under Agreement of Marian S. Ware, Dated January 24, 1990.

In re Residuary Trust under Will of Clara E. Ware, Deceased.

In re Trust under Section Fifth Paragraph B of the Will of John H. Ware, 3rd, Deceased.

**In re Residuary Trust under Will of John Ware.**

Superior Court of Pennsylvania.

Argued Sept. 11, 2002.
Filed Dec. 23, 2002.

Marc J. Sonnenfeld, Philadelphia, for First Union.

William H. Lamb, West Chester, for John Ware.

Robert K. Kalmbach, Kennett Square, for Lois Ware.

Clarence D. Bell, Jr., Media, for participating parties.

Before: McEWEN, P.J.E., FORD ELLIOTT and POPOVICH, JJ.

POPOVICH, J.

¶ 1 These consolidated appeals arise from the Decrees entered separately on December 20, 2001, and January 29, 2002,

in the Court of Common Pleas of Chester County, Orphans' Court Division. Upon review, we affirm.

¶ 2 The undisputed facts and procedural history are as follows: Cross–Appellant/Appellee John Ware IV (Ware) was named as the beneficiary of seven separate trusts created between the years 1957 and 1992 by Ware's parents and grandparents.[1] Appellant/Cross–Appellee First Union National Bank (Trustee) is the corporate Trustee or Co–Trustee of these trusts by virtue of succession.[2,3] Each of the seven trusts contains a spendthrift provision.

¶ 3 The Trust Under Agreement of John H. Ware, III, dated December 27, 1982, the Trust Under Will of Clara E. Ware and the Trust Under Will of John H. Ware all require that income be distributed. The other four trusts in question allow income to be distributed at the Trustee's discretion for Ware's or the remainder beneficiaries' "health, support, maintenance and education," or, alternatively, for Ware's "welfare, comfort, support and education." However, each trust provides that the Trustee may, in its sole discretion, make distributions from the principal of the trust for the aforementioned reasons. Ware received income distributions from the trusts on a quarterly basis. Ware's annual net income from the trusts was approximately $600,000.00.

¶ 4 Ware's marriage began to deteriorate, and he became separated from his wife, Lois L. Ware. Ware made monthly support payments to his estranged wife from his trust income. Pursuant to a Property Settlement Agreement, Ware agreed to pay his wife $3,444,000.00 in full satisfaction of her share of the parties' marital property. Under the Property Settlement Agreement, Ware was to make four monthly payments of $10,000.00 beginning on March 1, 2000. Thereafter, on July 1, 2000, Ware was to make one payment of $1,000,000.00, followed by three disbursements of $800,000.00 on January 1, 2001, July 1, 2001, and January 1, 2002. In June, 2000, Ware made an oral request to Trustee for the distribution of trust income and principal for the purpose of paying his obligation under the Property Settlement Agreement. Trustee declined this request. As a result, Ware was forced to meet the installment payments by liquidating most of his personal holdings and other assets and paying the proceeds to his wife. Trustee took the position that Ware's liquidation of assets to pay his wife incurred substantial tax liability against Ware, and the funds from the trust should go to pay the tax debt rather than the Property Settlement debt. Ware then failed to make the $800,000.00 payment due on January 1, 2001. Thereafter, Lois L. Ware filed a petition in the Chester County Court of Common Pleas seeking to hold Ware in contempt of court for violation of the terms of their Property Settlement Agreement.

¶ 5 At approximately the same time as Ware's breach of the agreement, Trustee

---

1. The trusts are identified as follows: Trust Under Agreement of John H. Ware, III, dated December 28, 1976; Trust Under Agreement of John H. Ware, III, dated January 23, 1991; Trust Under Agreement of John H. Ware, III, dated December 27, 1982; Trust Under Agreement of Marian S. Ware, dated January 24, 1990; Trust Under Will of Clara E. Ware, Deceased; Trust Under Will of John H. Ware, III, Deceased; Residuary Trust Under Will of John Ware (I).

2. We note that First Union National Bank is now Wachovia Bank, N.A.

3. Ware is named Co–Trustee on five of the trusts, but is unable to make distributions of trust income or principal to himself in that capacity.

ceased distributions of trust income to Ware, save those required under the Trusts with mandatory income distribution clauses. Trustee, through its trust account officer, Robert Gallagher, then directed Ware to submit his bills directly to Trustee for payment.

¶ 6 A hearing was held on June 14, 2001, on Ms. Ware's contempt petition. On June 15, 2001, the Chester County Family Court entered a finding of contempt against Ware and directed him to file an action in the Orphans' Court against Trustee seeking a declaratory judgment to determine the amount by which the Ware Family Trusts could be used to pay the sums due to Ms. Ware. Thereafter, on June 18, 2001, Ware made a formal demand to Trustee to distribute funds from the principal and income of the trusts so that Ware could pay his wife and purge his contempt. Trustee denied Ware's request. Ware paid his wife an additional $590,159.58 obtained through the sale of some of his remaining assets. In total, Ware paid Ms. Ware $1,630,159.60, leaving a balance of $1,809,840.40.

¶ 7 On June 28, 2001, Ware filed seven separate Petitions for Citation to Show Cause and Action for Declaratory Judgment, pursuant to the Declaratory Judgment Act, 42 Pa.C.S.A. § 7531, *et seq.*, to resolve the dispute between Trustee and himself regarding whether Trustee was required to make distributions of principal and income from the seven trusts so that Ware could pay his debt under the Property Settlement Agreement. Thereafter, on August 6, 2001, Trustee filed its Answer and New Matter to each of the seven Petitions. Ware filed his Reply to Trustee's New Matters. Oral argument, based on the stipulated facts, was held on November 14, 2001. On December 20, 2001, the trial court entered its Opinion and Decree with respect to one of the Peti-

tions. Trustee filed Exceptions to the trial court's Decree, and on January 7, 2002, Ware filed Cross–Exceptions. Before the trial court could address the Exceptions, Trustee filed a Notice of Appeal to this Court on January 22, 2002. Trustee's Notice of Appeal was for each of the seven Petitions. The trial court subsequently entered six Decrees for the remaining Petitions on January 29, 2002, stating that it was not originally aware that the cases were not formally consolidated. Ware filed a Notice of Cross–Appeal in each case on February 1, 2002. On February 12, 2002, Trustee filed an amended Notice of Appeal to include the six additional Decrees entered by the trial court.

¶ 8 Even before we reach a recitation of the issues Ware and Trustee raise, it is clear that we must first consider whether we have jurisdiction to entertain this appeal. *See Snyder v. Cress,* 791 A.2d 1198, 1200 (Pa.Super.2002) (appellate courts may raise issue of jurisdiction *sua sponte* ). It is clear from the record that these appeals were taken before the trial court had an opportunity to address the Exceptions put to it by each of the parties, and, therefore, this appeal would normally be premature. Nevertheless, in *State Farm Fire and Casualty Co. v. Craley,* 784 A.2d 781 (Pa.Super.2001), we held that decrees, regardless of what they are entitled (decree, decision and verdict, decree *nisi* ) entered in a declaratory judgment action that affirmatively or negatively declare the rights of the parties constitute final orders because they are defined as final by the Declaratory Judgment Act, 42 Pa.C.S.A. § 7532. *Craley,* 784 A.2d at 786–787. In this case, as was the case in *Craley,* the orders of December 20, 2001, and January 29, 2002, affirmatively declared the rights of Ware, thus they were final and immediately appealable to this Court. *Craley,* 784 A.2d at 787. Accord-

ingly, to preserve their appeal rights, one or both of the parties were required to file their Notice of Appeal within 30 days as required by Pa.R.A.P. 903(a) (relating to timeliness of appeals) and Pa.R.A.P 341(b)(2) (relating to final orders defined by statute). Therefore, if the parties to this action were to wait for determination of their Exceptions by the trial court, it is likely that their appeal would have been untimely.

¶ 9 Our decision to address this appeal without benefit of the trial court's ruling on the parties' Exceptions finds support in our Supreme Court's holding in *Chalkey v. Roush*, 569 Pa. 462, 805 A.2d 491 (2002). In *Chalkey*, our Supreme Court relied on 42 Pa.C.S.A. § 7539 (relating to determinations of fact in Declaratory Judgment Act cases) to hold that where a trial court enters a declaratory order following a determination of facts at trial, parties must file post-trial motions from that order, as they would in any other civil proceeding, before the order may be deemed a final order for purposes of an appeal. *Chalkey*, at 470, 805 A.2d at 496 n. 13. On the other hand, our Supreme Court held that where the trial court enters a declaratory order based on a pre-trial motion, the parties are not obligated to follow post-trial practice. *Id.*, at 470, 805 A.2d at 496 n. 13

¶ 10 The present case presents a third situation because the matter was decided upon stipulated facts. Therefore, it becomes clear that there was no need for the trial court to resolve issues of fact and that the trial court's ruling was based entirely on a determination of the law. The Exceptions are a nullity because the time limit for the trial court's determination of the Exceptions has long past. As such, the Decree is a final order for purposes of our review, and we will address the issues that each party presents.

¶ 11 The issues presented to this Court by the Trustee for review are as follows:

1. Whether the spendthrift provisions of a trust prevent a trustee from making discretionary distributions of trust income and principal to satisfy a beneficiary's equitable distribution obligation to the beneficiary's ex-wife.

2. Whether the Orphans' Court must first determine that a trustee abused its discretion in refusing a requested distribution of trust income before the Orphans' Court may compel the trustee to make the requested distribution.

3. Whether a distribution of trust income to satisfy a beneficiary's equitable distribution obligation to the beneficiary's ex-wife is a distribution for the beneficiary's health, support, maintenance and education within the terms of the trust instruments.

4. Whether a trustee properly exercised its discretion in declining a beneficiary's requested distribution of trust principal to satisfy the beneficiary's equitable distribution obligation to the beneficiary's ex-wife.

Trustee's brief at 5.

¶ 12 The issues presented to this Court for review by Ware are as follows:

1. Whether the [trial court] committed an error of law in ordering that [Trustee] is required to make distributions to [Ware] out of income from the seven Ware Family Trusts, rather than out of both income and principal.

2. Whether the [trial court] committed an error of law in concluding [. . .] that [Trustee] followed good fiduciary practice in refusing to consider a principal distribution to [Ware] rather than specifically finding that principal could and should be invaded under the circumstances of the case.

3. Whether the [trial court] committed an error of law in failing to order a distribution of the entire amount owing to [Ware's] ex-wife, Lois Ware, under the Property Settlement Agreement from the Ware Family Trusts.

4. Whether the [trial court] committed an error of law in failing to find that the obligation due to Mrs. Ware under the Property Settlement Agreement was predominantly in the nature of alimony and as such provided a proper basis for a principal distribution.

5. Whether the [trial court] committed an error of law in failing to find that [Ware] is the primary beneficiary of the seven Ware Family Trusts.

Ware's brief at 4.

¶ 13 At the outset, we note that we enunciated our scope and standard of review with respect to final orders from the orphans' court in *In Re Estate of Harrison*, 745 A.2d 676 (Pa.Super.2000) as follows:

Our standard of review of the findings of an orphans' court is deferential.

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.

*In Re Estate of Geniviva*, 450 Pa.Super. 54, 675 A.2d 306, 310 (1996) (internal citations omitted). However, "we are not constrained to give the same deference to any resulting legal conclusions." *Id.* "Where the rules of law on which the [court] relied are palpably wrong or clearly inapplicable, we will reverse the [court's] decree." *Horner v. Horner*,

719 A.2d 1101, 1103 (Pa.Super.1998) (discussing standard of review for courts of equity).

*Harrison*, 745 A.2d at 678–679.

¶ 14 To facilitate appellate review, we will address Ware's and Trustee's claims jointly when possible. Trustee's first claim and Ware's first and second claims present essentially the same issue for our review: Whether the spendthrift provisions of the Ware Family Trusts prevent Trustee from making distributions from the trusts' income and principal to Ware so that he would be able to pay his obligations under a marital Property Settlement Agreement.

¶ 15 As the trial court noted correctly in its Opinion of December 20, 2001, spendthrift clauses in trusts "insulate the assets of the trusts from the incursions of creditors until such time as those assets, either as principal or income, are delivered into the hands of the beneficiary." *See* Trial Court Opinion, 12/20/2001, at 2 (citing 10 *Summary of Pennsylvania Jurisprudence 2d*, Probate, Estates and Trusts § 31:7). When a spendthrift trust is at issue, the courts of this Commonwealth will uphold the spendthrift provisions as a means to enforce the settlor's right to dispose of his property as he so chooses. *Borsch's Estate*, 362 Pa. 581, 67 A.2d 119 (1949).

¶ 16 In order to determine the intent of the settlor of the trust, we look to the writing that established the trust, which is the best evidence of the settlor's intent. *Appeal of Gannon*, 428 Pa.Super. 349, 631 A.2d 176, 186 (1993). Of course, a reviewing court may not redraft a settlor's deed of trust or distort the language it contains in order to achieve what the court believes to be a beneficial result even if it is evident that the settlor would have reached the same conclusion as the review-

ing court. *In Re Benson,* 419 Pa.Super. 582, 615 A.2d 792, 795 (1991).

¶ 17 Trustee argues that the trial court erred in failing to adhere to the spendthrift provisions of the trust instruments with respect to income. Specifically, Trustee argues that the trial court erred when it entered a Decree requiring Trustee to pay Ware the trust income that it withheld from Ware because the spendthrift clauses of the seven Ware Family Trusts prohibit Ware from alienating or assigning his and the contingent remainder beneficiaries' (Ware's children) interests in the Ware Family Trusts.

■ ¶ 18 The Trust Agreements of John H. Ware, III, dated December 28, 1976, December 27, 1982, and January 23, 1991, the Trust Agreement of Marian S. Ware dated January 24, 1990, and the Trust Under Will of John H. Ware, III, each possess identical language with respect to the spendthrift clauses contained in them.[4] The spendthrift clauses state the following:

> Settlor [or Testator] directs that the principal of the trusts hereunder, and the income therefrom, so long as the same are held by [my Trustees or Executors], shall be free from the control, debts, liabilities and assignments of any beneficiary interested therein, and shall not be subject to execution or process for the enforcement of judgments or claims of any sort against such beneficiary.

*See* Spendthrift Clauses, Trust Agreements of John H. Ware, III, dated December 28, 1976, December 27, 1982, and January 23, 1991; the Trust Agreement of Marian S. Ware dated January 24, 1990; and Trust Under Will of John H. Ware, III.

¶ 19 It is evident from the plain language of the instruments that they merely state a truism of the law with respect to spendthrift trusts, which is that a spendthrift clause "insulate[s] the assets of the trusts from the incursions of creditors until such time as those assets, either as principal or income, are delivered into the hands of the beneficiary." *See* Trial Court Opinion, 12/20/2001, at 2 (citing 10 *Summary of Pennsylvania Jurisprudence 2d,* Probate, Estates and Trusts § 31:7). Herein, Trustee argues that the Property Settlement Agreement that Ware executed with his wife would assign or alienate improperly his and the contingent beneficiaries' (Ware's children) interests in the income of the trusts. This argument is without merit. The contingent beneficiaries have no interest in the income produced by the trusts after it is distributed to Ware, as made plain by the language in the spendthrift clause indicated above. *See* Spendthrift Clauses, Trust Agreements of John H. Ware, III, dated December 28, 1976, December 27, 1982, and January 23, 1991; the Trust Agreement of Marian S. Ware dated January 24, 1990; and Trust Under Will of John H. Ware, III.

■ ¶ 20 Ware's use of the income from the trust after he receives it is left to his own judgment, and Trustee is unable to interfere with that decision. *See Borsch Estate,* at 588, 67 A.2d at 122. Trustee's duty is to receive trust property and administer it, which does not include a duty to police the use of trust income after it enters the hands of the beneficiaries. *Cf. In Re Estate of Campbell,* 692 A.2d 1098, 1102 (Pa.Super.1997) (holding that a trustee is charged with the duty of receiving trust property, administering it and ensur-

---

**4.** These trusts are the largest trusts among the Ware Family Trusts and comprise the larger part of the arguments of both parties.

ing the safety of trust principal). Accordingly, we find that Trustee acted beyond the bounds of reasonable judgment when it withheld income disbursements to Ware from the trusts. *See In Re Estate of Feinstein,* 364 Pa.Super. 221, 527 A.2d 1034, 1037 (1987) (holding that courts will not disturb trustee's discretionary powers unless trustee abuses that discretion through dishonesty, improper motive, failing to use his judgment or acting beyond the bounds of reasonable judgment).

¶ 21 Trustee cites numerous cases that hold correctly that an *interest* in a spendthrift trust may not be *attached* by a former spouse to satisfy an equitable distribution debt. *See Clark v. Clark,* 411 Pa. 251, 191 A.2d 417 (1963). Presently, Ware is willing to pay voluntarily the funds he receives from the trusts directly to his wife, and Ware's wife has neither sought nor obtained an attachment upon Ware's interest in the trusts to his detriment or that of the remainder beneficiaries. Therefore, the cases cited are inapplicable to the present case.

¶ 22 We are unable to see any difference between the effect the present Property Settlement Agreement has upon the distributions of trust income that Ware possesses and the effect that an order of equitable distribution would have upon trust income in Ware's possession. If Ware's divorce case were to proceed to an equitable distribution hearing, Ware's wife would receive a share of Ware's general assets. Because the income received from the seven trusts represents the overwhelming majority of the income Ware possesses, Ware's wife would inevitably receive trust income after it was paid to Ware and placed in his bank account. Presently, Ware's execution of the Property Settlement Agreement merely served to speed and simplify his economic separation with his wife. Therefore, we are unable to find that the trial court abused its discretion when it found that the trust income should be disbursed to Ware so that he could pay voluntarily his obligation under the Property Settlement Agreement.

¶ 23 Ware, on the other hand, argues that both income and principal from the trust should have been disbursed to him to allow him to pay his obligations under the Property Settlement Agreement. Specifically, Ware argues that principal from the trusts should have been distributed to him because Trustee abused its discretion when it refused to invade the principal of the seven trusts because it failed to consider Ware's changed economic status caused by his tax debt and Property Settlement Agreement debt. This argument is without merit. The trial court reviewed the seven trust instruments and determined that the basic dispositive scheme of the seven Ware Family Trusts was that Ware was to be the presumptive recipient of income, while the principal was to pass to Ware's children as remainder beneficiaries. *See* Trial Court's Opinion, 12/20/2001, at 3–4.

¶ 24 A review of the record indicates that when Trustee was confronted with Ware's demands for income and principal from the trusts, it considered the effect a distribution of principal would have on the remainder beneficiaries. *See* Trustee's letter, 6/27/2001, at 3. Although we have determined that Trustee acted beyond reasonable judgment when it withheld income disbursements to Ware from the seven trusts, we find that Trustee acted properly in withholding distributions from the principal of the seven trusts. This is because in the case of distributing trust income to Ware, the interests of the remainder beneficiaries would not be compromised because the seven trusts were created with the purpose of distributing their income to Ware. Trustee was content to distribute

this income without any hesitation until it became notified of the Property Settlement Agreement. However, if Trustee invaded the principal of the trusts to provide funds to pay Ware's debts, the interests of the remainder beneficiaries would be compromised. *Cf. Estate of Campbell*, 692 A.2d at 1102 (holding that a trustee is charged with the duty of receiving trust property, administering it and ensuring the safety of trust principal). Such a result would be flatly contrary to the desires of the settlors of the seven trusts as expressed in the trust instruments. *See Appeal of Gannon*, 631 A.2d at 186 (holding that the writing that establishes the trust is the best evidence of the settlor's intent).

¶ 25 Ware's second claim argues that because the majority of the Trust documents grant the same discretion to Trustee to distribute income and principal, the trial court erred when it ordered that only the trust income payments be paid to Ware. All of the Ware Family Trusts provide that principal shall be distributed to Ware if Trustee deems the distribution appropriate for Ware's "health, support and maintenance" or for his "welfare, support, comfort and education." *See* Ware Family Trusts. Of the Ware Family Trusts that make income payments discretionary with Trustee, the "health, support and welfare" standard is also utilized to guide Trustee's discretion. Ware argues that the trial court erred because it did not find that Trustee failed to consider that Ware's income distributions alone were insufficient to meet his court-ordered obligations. This argument is merely a variation of the argument Ware presents with respect to his first claim. Trustee's duty is primarily to administer the Trust and ensure the safety of its principal. *See Estate of Campbell*, 692 A.2d at 1102. Herein, Trustee considered that an invasion of the principal would result in harm

to the remainder beneficiaries and violate the intent of the settlors of the Ware Family Trusts. Therefore, we are satisfied that Trustee did not err in withholding principal from the seven trusts. Accordingly, we are unable to find that the trial court abused its discretion when it found that the principal should not be invaded so that Ware may use its funds to pay for his debts under the Property Settlement Agreement.

¶ 26 We turn to Trustee's second claim: Whether the Orphans' Court must first determine that a trustee abused its discretion in refusing a requested distribution of trust income before the Orphans' Court may compel the trustee to make the requested distribution. Specifically, Trustee argues that the trial court erred in its analysis of the case by not applying an "abuse of discretion" analysis to Trustee's decision to withhold trust income and principal from Ware. This argument is entirely without merit. In the trial court's Opinion and Decree of December 20, 2001, it is evident that the trial court did consider whether Trustee abused its discretion, although the trial court did not state specifically the analysis provided in the relevant case law. *See Estate of Feinstein*, 527 A.2d at 1037 (holding that courts will not disturb trustee's discretionary powers unless trustee abuses that discretion through dishonesty, improper motive, failing to use his judgment or acting beyond the bounds of reasonable judgment).

¶ 27 In its Opinion of December 20, 2001, the trial court stated the following:

The trust provisions, with a couple of exceptions, make distributions of both principal and income discretionary with [Trustee]. Generally speaking, such distributions are to be made when [Ware's] welfare requires them. In terms of actual practice, the bank had been quite willing to make distributions of income

without necessary reference to [Ware's] welfare until he entered into his agreement with Mrs. Ware. [Trustee] then decided that since [Ware] would just turn the money over to Mrs. Ware, [Trustee] would stop making distributions altogether.

I certainly can't fault [Trustee] for not making distributions of principal. I think [Trustee] was following good fiduciary practice in that regard[.] The dispositive scheme of all the trusts (albeit in different degrees) indicates that [Ware] was to be the presumptive recipient of income, while the principal was to be distributed to his children. I think that is the general scheme which is assumed in these kinds of trusts. Perhaps for that reason, the legislature, when it adopted 20 Pa.C.S.A. § 6112, opened up only the income of a spendthrift trust to incursions from those entitled to support. Should I then require [Trustee] here to treat distributions of income and principal differently? Even though the operative language is similar, I think I should.

The touchstone for interpreting any fiduciary document is the intention of its creator. *See e.g., Estate of Krebs*, 334 Pa.Super. 635, 483 A.2d 919, 920–21 (1984). Read as a whole, these documents indicate that the intention of the various Settlors was to provide for [Ware] during his lifetime, and following his death, to provide for his children. As [Trustee] itself recognized, distribution of the income from these trusts satisfactorily accomplished that goal. This practice was in keeping with the teaching of *Krebs* and *Stephens v. Lewistown Trust Company*, 481 Pa. 194, 392 A.2d 313 (1978) that, unless a contrary intention clearly appears, income is not to be accumulated. If we need to justify the income distributions in this case in terms of [Ware's] welfare, I think it is

patently clear that his welfare requires that he not be thrown into jail for failure to comply with the terms of the Property Settlement Agreement.

Trial Court Opinion, 12/20/2001, at 3–4.

¶ 28 The above analysis indicates that the trial court considered Trustee's discretionary power and whether the Trustee came to the wrong decision regarding the use of that discretion. The trial court's Opinion indicates that Trustee was content to allow regular periodic distributions of trust income to Ware without question as to their use. Although not stated explicitly, the above holding by the trial court indicates that it found Trustee's decision to withhold income after Ware entered the Property Settlement Agreement was beyond the bounds of reasonable judgment, and, consequently, Trustee abused its discretion. *See Estate of Feinstein*, 527 A.2d at 1037. Accordingly, we find that the trial court did not abuse its discretion in its analysis of whether Trustee abused its own discretion.

¶ 29 Trustee and Ware's third claims present essentially the same question for our review: Whether distribution of income and principal from the Ware Family Trusts to Ware for the purpose of meeting his obligation under the Property Settlement Agreement is a distribution for Ware's health, support, maintenance, education or welfare.

¶ 30 Trustee argues that the trial court's order that Trustee pay income from the Ware Family Trusts to Ware for the purpose of purging the Order of Contempt against him violates the trust because such a payment would not be for Ware's "welfare." Trustee contends that the trial court erred when it concluded that disbursing to Ware the income from the Ware Family Trusts is a payment for his "welfare" because the disbursement would

keep him from being incarcerated. Trustee argues that this is because Ware could not be incarcerated to coerce payment of his obligations under the Property Settlement Agreements.

¶ 31 The enforcement powers of the Family Court are found in 23 Pa.C.S.A. § 3502. Title 23 Pa.C.S.A. § 3502 of the Pennsylvania Divorce Code provides:

(e) **Powers of the court.**—If, at any time, a party has failed to comply with an order of equitable distribution, as provided for in this chapter or with the terms of an agreement as entered into between the parties, after hearing, the court may, in addition to any other remedy available under this part, in order to effect compliance with its order:

(1) enter judgment;

(2) authorize the taking and seizure of the goods and chattels and collection of the rents and profits of the real and personal tangible and intangible property of the party;

(3) award interest on unpaid installments;

(4) order and direct the transfer or sale of any property required in order to comply with the court's order;

(5) require security to insure future payments in compliance with the court's order;

(6) issue attachment proceedings, directed to the sheriff or other proper officer of the county, directing that the person named as having failed to comply with the court order be brought before the court, at such time as the court may direct. If the court finds, after hearing, that the person willfully failed to comply with the court order, it may deem the person in civil contempt of court and, in its discretion, make an appropriate order, including, but not limited to, commitment of the person to the county jail for a period not to exceed six months;

(7) award counsel fees and costs;

(8) attach wages; or

(9) find the party in contempt.

¶ 32 We see no reason to disturb the trial court's finding that Ware could be jailed for contempt because any contempt order that could issue to Ware for his failure to pay his debt under the Property Settlement Agreement is not before this Court in this appeal.[5] Therefore, we will not consider the issue of whether Ware could be jailed for failure to pay his debts under the Property Settlement Agreement.[6] As we have already ruled that Ware should receive his regular disbursements of trust income, we need not address Ware's argument and Trustee's counter argument as they pertain to trust income. Further, we have previously found that Trustee did not act beyond the bounds of reasonable judgment when it refused to distribute principal from the

---

**5.** We note that this appeal stems from the Orphans' Court Division of the Chester County Court of Common Pleas. Any contempt order with respect to the Property Settlement Agreement would come to this Court from the Family Court Division.

**6.** We also note that in *Barrett v. Barrett*, 470 Pa. 253, 368 A.2d 616 (1977), our Supreme Court held the following:

"The use of the power to enforce compliance is exercised with the objective of compelling performance and not inflicting punishment." In accordance with this principle, we have indicated that a court may not convert a coercive sentence into a punitive one by imposing conditions that the contemnor cannot perform and thereby purge himself of the contempt.

*Barrett*, at 262, 368 A.2d at 620 (citations omitted).

Ware Family Trusts. Accordingly, Ware's argument with respect to the distribution of principal from the Ware Family Trusts fails.

¶ 33 Ware also argues that the trusts compelled Trustee to disburse both income and principal so that he could pay his obligation under the Property Settlement Agreement and to allow Ware to "maintain some semblance of his lifestyle." Specifically, Ware argues that Trustee acted beyond the bounds of reasonable judgment in failing to distribute both income and principal of the trusts. We have already addressed these contentions and found that Trustee acted within the bounds of reasonable judgment in withholding principal from the trusts to protect the interests of the remainder beneficiaries, but acted beyond the bounds of reasonable judgment in withholding income from the trusts. Further, there is no indication that Ware's day-to-day living was compromised throughout this litigation because Trustee used the trusts' income to pay his living expenses. Accordingly, we find that the trial court did not abuse its discretion with respect to Ware's third claim.

¶ 34 Ware and Trustee's fourth claims also present essentially the same issue for review: Whether the Property Settlement Agreement was in the nature of alimony to justify invasion of the principal of the Ware Family Trusts. Ware contends that, for reasons of public policy, the "support exception" to spendthrift trusts in 20 Pa. C.S.A. § 6112 should allow trust principal to be invaded to satisfy both support debts. On the other hand, Trustee argues that regardless of the nature of the Property Settlement Agreement, Ware's wife would not be able to invade trust principal to satisfy the debt under the Property Settlement Agreement, and thus, Ware should not be allowed to invade the trust principal to pay the debt. We agree with Trustee.

¶ 35 Ware argues that this Court should expand the "support exception" in 20 Pa.C.S.A. § 6112 to allow the invasion of trust principal to pay equitable distribution debt because "in many cases...the line between alimony and equitable distribution is an arbitrary distinction which should not determine the rights of the parties to economic justice." Ware's brief at 25. At the outset, we note that Ware's characterization of the "support exception" to spendthrift trusts in 20 Pa.C.S.A. § 6112 as allowing invasion of trust principal to satisfy support debt misstates the law.

¶ 36 Title 20 Pa.C.S.A. § 6112 states the following:

> **Income of a trust** subject to spendthrift or similar provisions shall nevertheless be liable for **the support** of anyone whom the income beneficiary shall be under a legal duty to support.

(emphasis added).

¶ 37 It is clear from the plain language of 20 Pa.C.S.A. § 6112 that the statute does not allow for the attachment of trust principal. This Court, as an appellate court, cannot rewrite a statute under the pretext of interpreting it. *See Halko v. Board of Directors of School Dist. of Foster Twp.*, 374 Pa. 269, 97 A.2d 793 (1953). When the words of a statute are free and clear of all ambiguity, the letter of the statute is not to be disregarded under the guise of pursuing its spirit. 1 Pa.C.S.A. § 1921(b). Therefore, we find Ware's first argument with respect to this claim to be wholly without merit. If the legislature intended to allow the invasion of both trust principal and income to satisfy marital support debts it would have indicated that intent in the statute.

¶ 38 Moreover, it is clear that "equitable distribution" is not "alimony." Alimony is a payment of support by one former spouse following divorce made to meet needs of the other former spouse who is unable to support himself or herself through appropriate employment. *See Miller v. Miller,* 744 A.2d 778 (Pa.Super.1999). Equitable distribution is merely a division of the marital property of each spouse. There can be no doubt that the property settlement agreement states that it is "equitable distribution" not "alimony" or "support." *See* Property Settlement Agreement. Accordingly, even if the policy of the "support exception" to 20 Pa.C.S.A. § 6112 applied herein, it would not be applicable because the Property Settlement Agreement is not a payment of "support." Ware's argument also fails because property inherited by one spouse is considered separate property and is not subject to equitable distribution; only the increase in value of that property is subject to equitable distribution. *See* 23 Pa. C.S.A. § 3501; *see also Solomon v. Solomon,* 531 Pa. 113, 120, 611 A.2d 686, 689 (1992).

¶ 39 Ware's second argument with respect to this claim is that the Property Settlement Agreement is not an equitable distribution scheme because the Property Settlement Agreement provides that the payments reduce by 25% should Ware's wife die. Ware argues that because alimony terminates with the death of the recipient that 25% reduction is, in fact, alimony. While this argument is novel, it nevertheless fails because 20 Pa.C.S.A. § 6112 only allows for the use of trust income to pay for a support obligation. We have already determined that Ware is entitled to the income from the trusts so that he may pay his debt, and, accordingly, it would not be necessary for Ware's wife to attempt to invoke the statutory remedy present in 20 Pa.C.S.A. § 6112. Accordingly, we find that the trial court did not abuse its discretion when it refused to allow Ware to invade the principal of the seven trusts.

¶ 40 We now will address Ware's final claim: Whether the trial court committed an error of law in failing to find that Ware is the primary beneficiary of the seven Ware Family Trusts. After a review of the record, we are unable to ascertain the error that Ware complains of on the part of the trial court. It is evident from the trial court's Opinion that it recognized Ware as the primary beneficiary of the Ware Family Trusts when it categorized Ware's children as "remainder beneficiaries." Ware baldly asserts that because he is named as Co–Trustee in several of the trusts and is granted a power of appointment by several of the trusts, then principal and income from the trusts should be distributed to him because the trusts do not define the remainder beneficiaries' interests, because it is evident that the settlors of the trust did not wish to limit his income from the trusts to a specific dollar amount. This argument is without merit. Ware cites no case law and develops no argument to bolster his contention. *See Estate of Lakatosh,* 441 Pa.Super. 133, 656 A.2d 1378, 1381 (holding that the argument portion of an appellate brief must include a pertinent discussion of the particular point raised along with discussion and citation of pertinent authorities); *see also* Pa.R.A.P. 2119. Further, it is evident from the trial court's Opinion that it did in fact find that Ware was the primary beneficiary of the seven trusts. Accordingly, we dismiss this argument.

¶ 41 As we have dismissed each of Trustee's and Ware's claims, we affirm the Decrees of the trial court.

¶ 42 Decrees affirmed.