J-A27031-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ESTATE OF JOHN DIJOSEPH, JR. APPEAL OF STEPHEN DIJOSEPH, BENEFICIARY AND | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Objector | : : : : : | |
| | : | No. 738 EDA 2021 |

Appeal from the Order Entered March 8, 2021
In the Court of Common Pleas of Chester County Orphans' Court at
No(s):  1516-1539

BEFORE:  PANELLA, P.J., DUBOW, J., and McCAFFERY, J.

MEMORANDUM BY DUBOW, J.:                          **FILED FEBRUARY 16, 2022**

Appellant, Stephen DiJoseph, appeals from the March 8, 2021 order entered in the Chester County Orphans' Court overruling his objections to the to the First and Final Account of the Estate of his father, John DiJoseph, Sr. ("Decedent").  After careful review, we affirm.

The facts and procedural history, as gleaned from the record including, the orphans' court's April 27, 2021 Corrected Decision ("Decision"), are as follows.

**Decedent's Insurance Business**

For years, Decedent owned a State Farm insurance agency (the "Agency"), where he worked side-by-side with his son, Robert DiJoseph ("Robert").  Decedent and Robert worked together for the better part of 40 years from 1974 until they closed the Agency on April 30, 2013.

The Agency held a bank account entitled "John DiJoseph DBA DiJoseph Insurance Agency" at Wells Fargo.

Decedent had an "Agent's Agreement" with State Farm that provided for termination payments and life termination payments (the "Termination Payments"), of approximately $4,100 per month for a period of five-years following termination of the Agent's Agreement. The Termination Payments were payable to Decedent or his legal representative.

On May 1, 2001, Decedent and Robert executed a contract—the "Contract of Employment Substitute Plan"—that established a private pension plan ("Pension Plan") payable to Robert. Pursuant to the terms of the Pension Plan, Robert was the beneficiary of the 5-year payout of Termination Payments, even if Decedent died prior to the completion of the payments. State Farm calculated, based on a number of factors, the Termination Payments due as $89,067.[1]

**The Power of Attorney**

On December 14, 2012, Decedent signed a Power of Attorney naming Robert as his agent.

**The Loan**

---

[1] Robert received this payment as a lump sum several months after Decedent died in May 2016.

In 2001, Decedent and Robert exchanged correspondence referencing a $140,000[2] "loan" from Decedent to Robert.[3] Decedent, however, considered the sum referenced as a gift and not an actual loan in that Decedent did not expect Robert to repay the money. This was in keeping with similar "loans" made by Decedent to both Robert and Appellant, neither of whom repaid those "loans."

**The Family Relationships**

Robert and Decedent had a close relationship as they worked alongside each other for many decades. Robert was in daily communication with Decedent, either in person or by phone, throughout that period of time. After Decedent's wife's 2012 death, Robert took even greater care of Decedent, including by having breakfast, lunch, or dinner with Decedent multiple times weekly. Decedent routinely gave Robert instructions concerning finances. In 2013, Decedent suffered a stroke, following which Robert spent almost every day caring for Decedent and advocating for him in Decedent's assisted living facility. Appellant, on the other hand, "was not around for his parents" and "wasn't there when they needed him."[4]

_____

[2] The orphans' court refers in its Decision to the "$147,000 'loan'"; in contrast, the correspondence and the parties refer to a $140,000 "loan." **Cf.** Decision at 4, 6; Correspondence, February 2001, at 2 (unpaginated). For consistency, when referring to the loan amount, we adopt the position of the parties.

[3] In this correspondence, the word "loan" appears in quotation marks. N.T., 12/11/20, at 25.

[4] Decision at 5.

**The Estate Administration**

Decedent died testate on May 29, 2016. On March 6, 2018, the Register of Wills admitted Decedent's December 14, 2012 will ("Will") to probate and granted letters testamentary to Robert, whom Decedent had named executor. Appellant and Robert were the only beneficiaries of Decedent's estate.

The Will provided that Robert inherit (1) all of Decedent's interest in the Agency; and (2) all of the business and personal property located within the DiJoseph Agency, including the bank account known as "DiJoseph Jr. DBA, DiJoseph Agency." The Will further provided that Robert inherit 70% of the remainder of the Estate and Appellant inherit 30%.

On January 3, 2019, Appellant filed a Petition for Citation to File Accounting and to Remove Executor. On July 22, 2019, the orphans' court granted the petition for accounting and ordered Robert to file an account within 60 days.

On September 20, 2019, Robert filed the account ("Executor's Accounting") and a Petition for Adjudication/Statement of Proposed Distribution of the estate assets. The Executor's Accounting included Decedent's $2,311 interest in a Wells Fargo checking account held jointly with Robert.

On February 5, 2020, Appellant filed objections to the account. Appellant objected to Robert not characterizing the $140,000 payment from Decedent to Robert as a loan that Robert was required to repay to the estate. Appellant further alleged that during the period between April 2013 and

Decedent's death in May 2016, when the Agency had been closed, Robert dissipated Decedent's estate assets by improperly using the Agency bank account for financial transactions in the amount of $407,000.

Following two days of hearings on Appellant's objections, the orphans' court overruled them. The orphans' court concluded, relevantly, that (1) the $140,000 payment to Robert was a gift and not a loan; (2) Decedent bequeathed his business interests to Robert in the Will; (3) Robert was the named beneficiary of the May 1, 2001 business contract creating the Pension Plan; (4) the State Farm Termination Payments were payable contractually to Robert and were not probate assets; (5) the referenced 70%/30% split in the Will pertained to any probate assets remaining in the estate; (6) even if the Termination Payments were probate assets, they would ultimately pass 100% to Robert to whom Decedent specifically bequeathed them in the Will and Appellant's share would be zero; (7) Decedent's estate consisted solely of non-probate assets; and (8) the Estate Accounting filed by Robert was accurate and complete.[5]

Appellant raises the following issue on appeal:

1. Whether the trial court committed an error of law or abused its discretion in overruling the objections and exceptions of [Appellant]?

---

[5] Decision at 6-7.

- 5 -

Appellant's Brief at 3.[6]

## Standard of Review

Appellant's issues challenge the findings of the orphans' court. Thus, our standard of review is deferential. ***In re Ware***, 814 A.2d 725, 731 (Pa. Super. 2002). "When reviewing a decree entered by the [o]rphans' [c]ourt, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence." ***In re Estate of Rosser***, 821 A.2d 615, 618 (Pa. Super. 2003) (citation omitted). "Because the [o]rphans' [c]ourt sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion." ***Ware***, 814 A.2d at 731 (citation omitted). An abuse of discretion exists when a finding by the lower court is not based upon the evidence of record. ***In re Paxson Trust I***, 893 A.2d 99, 112 (Pa. Super. 2006). "The test to be applied is not whether we, the reviewing court, would have reached the same result, but whether a judicial mind, after considering the evidence as a whole, could reasonably have reached the same conclusion." ***In re Gumpher***, 840 A.2d 318, 321 (Pa. Super. 2003) (citations

---

[6] Although Appellant has raised one question for review, he has included argument in his Brief pertaining to two distinct questions: (1) whether the orphans' court "improperly speculated as to Decedent's intent with regard to the loan to Robert [] in the amount of $140,000"; and (2) whether the orphans' court erred in failing to include $407,000 spent by Robert between April 2013 and May 2016 in the Estate and to properly address the liquidation of the IRAs. Despite Appellant's failure to divide his argument "into as many parts as there are questions to be argued," ***see*** Pa.R.A.P. 2119(a), we address Appellant's arguments in turn.

omitted). This Court is not, however, constrained to defer to the legal conclusions of the orphans' court. *Ware*, 814 A.2d at 731.

**Issue I- The "Loan"**

Appellant first claims that the trial court erred in finding that the $140,000 given to Robert by Decedent was a gift and not a loan. Appellant's Brief at 9-11. He asserts that the record evidence, including Robert's own testimony and prior reference in writing to the payment as a "loan," belied that characterization. *Id.* at 9. He further asserts that Robert did not present any affirmative evidence that Decedent intended that sum as a gift to Robert. *Id.* He concludes, therefore, that the orphans' court erred in not including $140,000 in Decedent's Estate subject to the residuary distribution scheme set forth in Decedent's Will. *Id.* at 11.

Robert testified at the November 4, 2020 hearing about the $140,000 gift from Decedent. Relevantly, he testified that it was not unusual for Decedent to "loan" Robert and Appellant money and, in fact, Decedent "had done that for [Appellant] on many occasions, lent him 15 here, ten there." N.T., 11/4/20, at 66. Robert also testified as follows about Decedent's use of the term "loan," which appeared in quotation marks in the 2001 correspondence:

> My father had a habit of saying, when he gave us money, [Appellant] or [me], I'll loan you this money. So those loans were not contractual loans that'd be paid back. It was just his term. Dad, I can't finish my driveway at Wilson Avenue, can you loan me $10,000, things like that.

He did the same thing with [Appellant] at various times; although I don't have documentation. I just have my memory. There were no contracts for loans, and there was no payment schedule of loans. That's why it's in quotation marks, your Honor.

N.T., 12/11/20, at 24-25. Robert explained that he did not "ever pay back directly, dollar for dollar, those [] so-called loans . . . because [Decedent] didn't ask for them [to be repaid]." **Id.** at 25.

The orphan's court credited this testimony in concluding that the so-called $140,000 loan from Decedent to Robert was, in fact, a gift. We cannot and will not disturb the orphans' court's credibility determination. Moreover, we observe that Appellant did not present any affirmative evidence—such as a promissory note or repayment schedule—that Decedent intended the transfer of this sum as a loan. **See In re Dzierski's Estate**, 296 A.2d 716, 718 (Pa. 1972) (explaining that "[i]t is the general rule in Pennsylvania that the burden of proving that a transfer of property [] was not a gift rests on the party so asserting[], and that the burden of proof is met only by the production of evidence of a clear, strong or compelling nature."). Accordingly, the orphan's court did not abuse its discretion declining to include this $140,000 in the residuary of Decedent's estate subject to distribution to Appellant.

**Issue II- Alleged Dissipation of Estate Assets**

In his second issue, Appellant claims that the orphans' court erred in not addressing Appellant's allegation that Robert improperly spent $407,000 over a 36-month period from the Agency's bank account on his personal expenses after the Agency closed in 2013. Appellant's Brief at 11-12. He asserts that Robert funded the business account from which he improperly

used funds with the State Farm Termination Payments in the amount of $147,600 and from Decedents' IRA accounts of which Appellant and Robert were co-beneficiaries. *Id.* at 13. Essentially, Appellant argues that trial court erred in not including in Decedent's estate at least $111,800 that Robert improperly deposited in the Agency's bank account. *Id.* at 15.

In support of this claim, Appellant relies on one case—***Ryan v. MacDonald***, 30 A.2d 662 (Pa. Super. 1943)[7]—for the general proposition that "where it is shown property was owned by a decedent within a short time prior to his death, the burden is on the person who claims a change of ownership to prove it." Appellant's Brief at 15 (citing ***Ryan***, 30 A.2d at 663). He also cites extensively to Robert's testimony where Robert explained the business and personal relationship between Robert and Decedent, the sources of funding for the Agency's account, the nature of the expenditures he made from the account, and their purposes. *Id.* at 12-13.

The orphans' court's adjudication belies Appellant's claim that the court failed to consider Robert's allegedly improper actions. The Decision reflects that the court considered Robert's extensive testimony, found it credible, and concluded that Appellant's "averments and allegations concerning inappropriate or unlawful actions of Robert during his tenure as an employee of [Decedent's] State Farm Agency, as [a]gent under [Decedent's] [p]ower of [a]ttorney, or as Executor of [Decedent's] estate[] are baseless[] and

---

[7] This case involved a transfer of stock certificates owned solely by a decedent. ***Ryan***, 30 A.2d at 663.

unfounded." Decision at 7. The court further found that "[p]rior and subsequent to [] Decedent's death, Robert took no action as an [a]gent under Decedent's [p]ower of [a]ttorney to deplete [Appellant's] assets or any beneficial interest in the estate." *Id.*

The record supports the orphans' court's factual findings, and this Court cannot and will not reweigh the evidence or disturb the orphans' court's credibility determinations. Thus, we conclude that the orphans' court did not abuse its discretion.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/16/2022