J-S46005-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF WILLARD CHARLES GRITSER, DECEASED | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : : | |
| APPEAL OF: CAROL SCOTT | : : : : : : | |
| | : | No. 741 WDA 2023 |

Appeal from the Decree Entered June 8, 2023
In the Court of Common Pleas of Butler County Orphans' Court at No(s):
O.C. No. 2019-00229

BEFORE:  DUBOW, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY DUBOW, J.:                    **FILED: May 7, 2024**

Appellant, Carol Scott, appeals from the June 8, 2023 order entered in the Butler County Orphans' Court dismissing her petition for rule to show cause and striking her $90,000 claim against the Estate of Willard C. Gritser, Deceased ("Decedent").  Appellant also challenges the orphans' court's March 10, 2022 order granting in part and denying in part the motion for summary judgment filed by the Estate Administrator, Amina Loucas ("Appellee").  After careful review, we affirm.

The relevant facts and procedural history as gleaned from the record, including the orphans' court's March 9, 2022 memorandum opinion and its June 8, 2023 findings of fact and conclusions of law, are as follows.  Appellee, who was Decedent's daughter, lives in Arizona.  On August 9, 1995, Decedent executed a will naming Appellee the sole beneficiary.  On October 17, 2006,

Decedent executed a general durable power of attorney naming Appellee his attorney-in-fact.

Appellant was Decedent's neighbor and friend. Prior to Decedent's death, Decedent purchased four $20,000 certificates of deposit from Farmers National Bank and named Appellant as beneficiary of each certificate of deposit, thereby creating four Totten trusts for Appellant's benefit.[1]

On October 7, 2019, while Appellant was transporting Decedent to an eye doctor appointment, Decedent suffered a medical event requiring his hospitalization. Immediately following Decedent's medical event, Appellee travelled from her home in Arizona to Pennsylvania.

Two days later, Appellee visited Appellant's home to retrieve items belonging to Decedent including Decedent's health care power of attorney, the keys to Decedent's house, and a checkbook for Decedent's PNC bank account.

On October 11, 2019, utilizing the general durable power of attorney, Appellee liquidated the certificates of deposit issued by Farmers National Bank. Appellee also opened a standard savings account in the sole name of

---

[1] A Totten trust is a bank account that has a beneficiary selected by the person who opens the account. Totten trusts are also known as "payable on death accounts." Totten trust funds do not pass through probate, but go directly to the beneficiary upon the settlor's death. "A Totten trust allows the depositor to retain complete control of the fund during [her] life and yet secure to the beneficiary any balance standing in the account at the death of the depositor." **Estate of McFetridge**, 372 A.2d 823, 825 (Pa. 1977) (citation, quotation marks, and ellipses omitted). "Totten Trusts [] are essentially a 'poor man's will,' a judicial creation that[,] strictly speaking[,] is neither a will nor a trust but are fairly obviously testamentary transfers." **In re Estate of Rood**, 121 A.3d 1104, 1108-09 (Pa. Super. 2015) (citation, brackets and some internal quotation marks omitted).

Decedent into which she deposited the funds from the liquidated certificates of deposit. Upon Decedent's death, those funds became part of Decedent's probate estate.

In light of Decedent's poor health, Appellee began to make arrangements for him to move to her home in Arizona. Appellee determined that, in order for Decedent to reside with her in Arizona, she needed to renovate her home to add an "in-law" suite that could accommodate a hospital bed and have a handicap access ramp. Decedent also needed a home health care aide, but Appellee learned Decedent did not qualify for Medicaid because his assets were greater than $2,000. Therefore, Decedent would have to pay out-of-pocket for daily home health care services for the periods of time Appellee was at work. However, most of Decedent's assets were not liquid and were held in investment accounts.

Decedent died unexpectedly on October 21, 2019. At that time, his PNC checking account contained $233,232.03 and he owned personal property valued at $939,512. Decedent and Appellee also owned jointly held assets at the time of Decedent's death whose total value was $101,540.10.

On November 8, 2019, Appellant filed a $90,000 claim against Decedent's estate.[2] On February 28, 2020, Appellee filed a petition for a rule to show cause as to why the court should not strike Appellant's claim,

_____

[2] This amount represents the value of the certificates of deposit plus interest, counsel fees, and costs.

asserting that Appellant had no beneficial interest or ownership in any of Decedent's property.[3]

On August 12, 2020, Appellant, seeking the return of her value of the liquidated certificates of deposit, filed a petition for rule to show cause why the orphans' court should not set aside Appellee's liquidation of the Totten trusts and transfer of the trust funds into Decedent's savings account. Appellant asserted that Appellee violated the express provisions of 20 Pa.C.S. §§ 5601.3 and 5601.4, pertaining to the duties and authority of powers of attorney, when she liquidated the certificates of deposit. Appellee filed a response to the rule and the court scheduled a hearing on the matter. The court, however, continued the hearing numerous times while the parties conducted discovery.

On October 8, 2021, Appellee filed a motion for summary judgment. In the motion, Appellee asserted the estate's entitlement to judgment as a matter of law because, pursuant to Decedent's October 17, 2016 power of attorney, Appellee had the authority open and close bank accounts in Decedent's name. In support of this assertion, Appellee relied on the language of the power of attorney, which included a provision directing that Appellee had authority to "open or close any bank account or bank accounts in

_____

[3] The court did not issue a rule to show cause as Appellee requested. Thus, on May 12, 2020, Appellee filed objections to Appellant's claim. The orphans' court overruled the objections on August 5, 2020.

- 4 -

[Decedent's] name or over which [Decedent has] control with any banking institution[.]" Power of Attorney, 10/17/06.

Appellant filed an answer in opposition to the motion on January 6, 2022, reasserting her contention that Appellee violated the statutes governing powers of attorney. She claimed that genuine issues of material fact existed as to whether Appellee acted at Decedent's behest in liquidating the certificates of deposit. She also argued that it was "far from clear" that Appellee was entitled to judgment as a matter of law because Appellant's deposition testimony "suggested" that Appellee acted against Decedent's wishes by liquidating the certificates of deposit. Brief in Opposition to Motion for Summary Judgment, 1/6/22, at 5 (unpaginated). Appellant also asserted that, in liquidating the certificates of deposit and depositing the funds into a bank account the proceeds of which subsequently passed into Decedent's estate of which Appellee was the sole beneficiary, Appellee created a conflict of interest and, thereby, violated Section 5601.3(b).[4] Last, Appellant asserted that the power of attorney did not expressly authorize Appellee to change a beneficiary designation and by dissolving the certificates of deposit, Appellee

---

[4] Section 5601.3(b) obligates an agent acting under a power of attorney to "act so as not to create a conflict of interest that impairs the agent's ability to act impartially in the principal's best interest." 20 Pa.C.S. § 5601.3(b)(2).

impermissibly changed their beneficiary designation to herself in violation of Section 5601.4(a).[5]

Following a hearing on Appellee's motion for summary judgment, on March 10, 2022, the orphans' court granted in part the Appellee's motion for summary judgment. The court found that Decedent's October 17, 2006 power of attorney empowered Appellee to redeem, close, or convert to cash the disputed certificates of deposit. The court denied the motion in all other respects after concluding that genuine issues of material fact exist.

On June 24, 2022, Appellant filed a petition for a hearing on her still-outstanding $90,000 claim against the estate. By agreement of counsel, the orphans' court scheduled hearing for June 8, 2023.

Both Appellant and Appellee testified at the hearing. The parties stipulated that the certificates of deposit were Totten trusts with Appellant as the beneficiary. Appellee's testimony, which the orphans' court found credible, established the facts as set forth above. In addition, Appellee testified that she did not use any of the money from the liquidated certificates of deposit for her own benefit. She also testified that, at the time she was arranging to care for Decedent, Appellee was not aware of the value of the assets in Decedent's investment accounts. Following the hearing, the

---

[5] Section 5601.4(a) lists the acts an agent acting under a power of attorney may do on behalf of a principal only if expressly provided by the power of attorney. Creating or changing a beneficiary designation is an act that the statute requires the power of attorney expressly authorize. *See* 20 Pa.C.S. § 5601.4(a)(4).

orphans' court found that Appellee: (1) acted in good faith and in Decedent's best interests when she liquidated the certificates of deposit in order to arrange for Decedent's care; (2) did not liquidate the certificates of deposit for her own benefit; (3) acted diligently and with care and competence to determine Decedent's care needs and her decision to liquidate the certificates of deposit was based on information provided to her regarding Decedent's health care and financial needs; (4) did not act so as to create a conflict of interest that impaired her ability to act impartially; and (5) did not breach any fiduciary duty to Decedent. The court, therefore, concluded that Appellant did not have any right to, interest in, or claim to the proceeds of the liquidated certificates of deposit. Accordingly, the court dismissed Appellant's petition for rule to show cause and struck her claim against the estate.

This timely appeal followed.[6]

Appellant raises the following issues on appeal:

1. Did the court err as a matter of law and/or abuse its discretion in the order of court dated March 9, 2022, by partially granting the Administrator Amina Loucas's motion for summary judgment and concluding the Loucas had the authority to dissolve the at-issue certificates of deposit under an October 17, 2006[] power of attorney?

2. Did the court err as a matter of law and/or abuse its discretion in the order of court dated June 8, 2023, by denying

_____

[6] Appellant complied with the orphans' court's order to file a Pa.R.A.P. 1925 statement. The orphans' court filed a Rule 1925(a) opinion in which it directed this Court to its March 9, 2022 memorandum opinion and its June 8, 2023 findings of fact and conclusions of law for an explanation of the reasons underlying its orders.

[Appellant's] Rule to Show Cause Why Intervivos Transfer by Agent Who is Now Named Executrix Should Not be Set Aside?

3. Did the court err as a matter of law and/or abuse its discretion because its findings of fact and conclusions of law contradicted the testimony given during the hearing?

4. Did the court err as a matter of law and/or abuse its discretion in the order of June 8, 2023, in striking [Appellant's] claim against the Estate of Willard Chrales Grister for [$90,000]?

Appellant's Brief at 4-5 (unnecessary capitalization omitted).

**A.**

Each of Appellant's issues challenges the findings of the orphans' court. Thus, our standard of review of is deferential. *In re Ware*, 814 A.2d 725, 731 (Pa. Super. 2002). "When reviewing a decree entered by the [o]rphans' [c]ourt, this Court must determine whether the record is free from legal error." *In re Estate of Rosser*, 821 A.2d 615, 618 (Pa. Super. 2003) (citation omitted). "Because the [o]rphans' [c]ourt sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion." *Ware*, 814 A.2d at 731 (citation omitted). An abuse of discretion exists when a finding by the lower court is not based upon the evidence of record. *In re Paxson Trust I*, 893 A.2d 99, 112 (Pa. Super. 2006). "The test to be applied is not whether we, the reviewing court, would have reached the same result, but whether a judicial mind, after considering the evidence as a whole, could reasonably have reached the same conclusion." *In re Gumpher*, 840 A.2d 318, 321 (Pa. Super. 2003) (citations omitted). This Court is not, however,

constrained to defer to the legal conclusions of the orphans' court. **Ware**, 814 A.2d at 731.

## B.

In her first issue, Appellant claims that the orphans' court erred in granting partial summary judgment in favor of Appellee. She asserts, in particular, that the court erred in finding that Appellee had the authority under the general durable power of attorney to change the beneficiary of the Totten trusts by liquidating the certificate of deposits because the general durable power of attorney did not explicitly grant her that authority. Appellant's Brief at 15. Appellant asserts that in so doing Appellee not only exceeded the scope of the power of attorney under Section 5601.4(a)(1), but also created a conflict of interest under Section 5601.4(a)(4) by naming herself beneficiary. **Id.** Appellant argues that the power of attorney lacked the requisite express language that would permit Appellee to change a designated beneficiary. **Id.** at 14.

The Honorable S. Michael Yeager has authored a comprehensive, thorough, and well-reasoned opinion, including a discussion of relevant case law, the statutes applicable at the time Decedent executed the general durable power of attorney, and the language of the power of attorney, to explain why it concluded that Appellee had authority under the power of attorney to liquidate the certificates of deposit and place the proceeds in Decedent's savings account. **See** Orphans' Ct. Op., 3/9/22, at 4-9 (concluding that, because, the power of attorney specifically gave Appellee the power to

- 9 -

"engage in banking and financial transactions" and expressly granted Appellee the "right to negotiate, sell or convert to cash his Certificates of Deposit," Appellee had the "power to withdraw and receive the income or corpus of these specific trusts by closing the accounts, and thereby remove [Appellant] as a beneficiary thereof."). After a thorough review of the record, the briefs of the parties, and the orphans' court's opinion, we discern no abuse of discretion or error of law in the court's conclusion that no genuine issue of material fact exists with respect to Appellee's authority to liquidate the certificates of deposit. We, thus, affirm the order granting partial summary judgment in favor of Appellee on the basis of the orphans' court's March 9, 2022 opinion.

## C.

Appellant next claims that the trial court erred in denying her petition to set aside the liquidation of the certificates of deposit because Appellee provided no evidence that Decedent wanted the Totten trusts dissolved. Appellant's Brief at 16. Noting that Decedent created the trusts only shortly before his October 2019 death, Appellant argues that Appellee acted against Decedent's clear, recent, and reasonable expectations in dissolving the certificates of deposit in violation of 20 Pa.C.S. § 5601.3(a)(1), when the "timeline indicates that [] Decedent reasonably expected, as part of his estate plan, that these CDs were going to [Appellant].[7] *Id.* at 17. Appellant also

---

[7] Decedent created the certificates of deposit in November 2018, January 2019, April 2019, and August 2019.

argues that Appellee violated the fiduciary duty of loyalty she owed to Decedent by liquidating the certificates of deposit. *Id.* at 19-20.

"The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." *Eichman v. McKeon*, 824 A.2d 305, 319 (Pa. Super. 2003) (citations omitted). *See* Pa.R.A.P. 2111 and Pa.R.A.P. 2119 (listing argument requirements for appellate briefs). "When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review, a Court will not consider the merits thereof." *Branch Banking and Tr. v. Gesiorski*, 904 A.2d 939, 942-43 (Pa. Super. 2006) (citation and brackets omitted). *See* Pa.R.A.P. 2101 (explaining that substantial briefing defects may result in dismissal of appeal).

Here, Appellant has not developed any argument with citation to controlling authority and discussion of that authority vis-à-vis the facts of this case. Instead, she has merely baldly asserted that Appellee's actions violated certain provisions of Section 5601.3. Appellant's failure to develop this issue has precluded our ability to provide meaningful review. Thus, it is waived.

**D.**

In her third issue, Appellant asserts that the orphans' court's findings of fact and conclusions of law contradicted Appellee's testimony. Appellant's Brief at 23-24. In particular, Appellant claims that the court erroneously found that Appellee "contacted a social worker who visited [] Decedent's Pennsylvania home and determined the home was not safe for [] Decedent"

when Appellee's testimony established only that she showed videos of Decedent's home to the social worker. *Id.* at 23 (citing Findings of Fact, 6/8/23, at 14.c.; N.T. Hr'g, 6/8/23, at 17). Appellant also contends that, contrary to the court's findings of fact, Appellee testified that "it was deemed he was not safe to go back," not that the social worker determined that Decedent's home was not safe.[8] *Id.*

Following our review of the notes of testimony, we agree that the orphans' court findings of fact slightly misstate Appellee's testimony. Appellee did, in fact, testify that she showed the social worker a video of Decedent's home as Appellant claims. N.T. Hr'g at 17. In addition, it is not clear from Appellee's testimony whether it was Appellee or the social worker who determined that Decedent's home was not safe for Decedent. *Id.* Nevertheless, Appellant has not presented any argument to this Court regarding the impact these minor misstatements had on the orphans' court's conclusions of law or the outcome of the case. Accordingly, we conclude these errors were harmless.

_____

[8] Appellant also argues that Appellee's testimony did not support the orphans' court's finding that Appellee acted in good faith and in Decedent's best interest. Appellant's Brief at 23. Appellant has not, however, cited to the place in the notes of testimony where Appellee allegedly gave testimony that contradicts the court's findings, as required by Pa.R.A.P. 2119. *See* Pa.R.A.P. 2119(c) (requiring that when an appellant references a matter appearing in the record the appellant include in the argument "a reference to the place in the record where the matter referred to appears[.]"). In light of this omission, we decline to consider this argument as doing so would require us to scour the record and develop this argument for Appellant, which we cannot and will not do.

**E.**

In her final issue, Appellant contends, in a one paragraph argument devoid of citation to any case law or to the record, that the orphans' court erred in striking her claim against Decedent's estate because Appellee acted in bad faith and against Decedent's interest and expectations. *Id.* at 24. This argument is woefully undeveloped and, we, thus, decline to address it.

**F.**

In sum, having found each of Appellant's issues meritless or waived, we affirm the orphans' court's March 9, 2022, and June 8, 2023 orders.[9]

Orders affirmed.

---

[9] Appellant's Brief also contains an argument section in which she claims that the court erred in finding that Appellant did not have a right to, interest in, or claim to the certificates of deposit. Appellant's Brief at 22. This argument does not correspond to any of the questions raised in Appellant's statement of questions involved nor is it fairly suggested thereby, in violation of Pa.R.A.P. 2116. *See* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). Moreover, even if Appellant had raised this issue in her statement of questions, she has not developed the argument set forth therein with citation to any case law or to the record. We, thus, conclude that Appellant has also waived this issue.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

5/7/2024

**IN THE COURT OF COMMON PLEAS OF BUTLER COUNTY, PENNSYLVANIA**

IN RE: ESTATE OF WILLARD      : ORPHANS' COURT DIVISION
CHARLES GRITSER, Deceased      : O.C. No. 229 of 2019

Yeager, P. J.                                    March 9, 2022

## MEMORANDUM OPINION

At the time set for argument on the Respondent's, Amina Loucas, Executrix of the Estate of Willard Charles Gritser, Deceased, *Motion for Summary Judgment*, on the 14th day of January, 2022, Elizabeth A. Gribik, Esquire, appeared on behalf of said Respondent. D. Robert Marion, Esquire, and Dorothy J. Petrancosta, Esquire, appeared on behalf of the Petitioner, Carol Scott.

### I.     Standard of Review

Pennsylvania Rule of Civil Procedure 1035.2 provides, "Any party may move for summary judgment in whole or in part as a matter of law,

> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
>
> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury."

Pa.R.C.P. No. 1035.2. Summary judgment is appropriate only in cases that are clear and free from doubt. *Redland Soccer Club, Inc. v. Department of the Army and Dept. of Defense of the U.S.*, 696 A.2d 137 (Pa. 1997). Further, a court must view the record in the light most favorable to the non-moving party, and resolve all doubts concerning the existence of a genuine material fact against the moving party. *Id.* Moreover, the Courts have held that for the purposes of summary judgment, a material fact is one that directly affects the outcome of the case. *Kenney v. Jeanes Hosp.*, 769 A.2d 492 (Pa.Super. 2001). As such, it is not the Court's function to decide

any issues of fact, but to solely determine whether there is a genuine issue of material fact to be tried. *McDonald v. Marriott Corp.*, 564 A.2d 1296 (Pa.Super. 1989).

## II.    Discussion

Presently before this Court is the Respondent's, Amina Loucas, Executrix of the Estate of Willard Charles Gritser, Deceased, *Motion for Summary Judgment*, wherein she requests this Court declare that the General Durable Power of Attorney executed by the Decedent, Willard Charles Gritser, on or about October 17, 2006, naming the Respondent, Amina Loucas, as his Agent granted said Agent the power to redeem or convert to cash the Certificates of Deposit which named the Petitioner, Carol Scott, as a beneficiary thereof. The Respondent further asks the Court to enter Summary Judgment in her favor by holding that she acted in accordance with the October 17, 2006, General Durable Power of Attorney. In this regard, the Respondent argues that the October 17, 2006, General Durable Power of Attorney granted her the power to open or close any bank account held in the name of Willard Gritser, and further permitted her to negotiate, sell or convert to cash the Certificates of Deposit. The Respondent argues these actions were clearly within the purview of her authority as Agent for Willard Gritser.

The Petitioner, Carol Scott, counter-argues, first, that the Respondent's *Motion for Summary Judgment* should be denied because it was filed for the purpose of delaying trial. Secondly, the Petitioner argues that Willard Gritser created Totten Trusts when he named the Petitioner as beneficiary of these Certificates of Deposit, and that the General Durable Power of Attorney of Willard Gritser did not empower the Respondent to change the beneficiary designation on these Trusts, as the document did not specifically grant this power pursuant to 20 Pa.C.S.A. § 5601.4(a)(4). She further argues the Respondent did not have the power to terminate these trusts without specific language granting her that power pursuant to 20 Pa.C.S.A. § 5601.4(a)(1). She additionally argues that the *Motion for Summary Judgment* should be denied because there are

2

genuine issues of material fact that remain unresolved, such as whether the Decedent instructed the Respondent to close the Certificates of Deposit, whether the Respondent failed to act in accordance with the reasonable expectations of the Decedent in violation of 20 Pa.C.S.A. § 5601.3(a), whether the Respondent created a conflict of interest by closing the Certificates of Deposit in violation of 20 Pa.C.S.A. § 5601.3(b)(2), and whether the Respondent violated her duty to preserve the known estate plan of the Decedent under 20 Pa.C.S.A. § 5601.3(b)(6). Finally, the Petitioner argues that summary judgment should not be granted because her asserted claims for Breach of Fiduciary Duty and Good Faith are not strictly dependent upon whether the Respondent had the power to close the Certificates of Deposit.

With regard to the Petitioner's argument that the Respondent's *Motion for Summary Judgment* should be denied because it was filed for the purpose of delaying trial, pursuant to *Order of Court* under date of January 14, 2021, any and all dispositive motions in this matter were to be filed on or before May 31, 2021. The Respondent timely filed a *Motion for Summary Judgment* on or about May 14, 2021. Argument thereon was scheduled for October 1, 2021. Thereafter, the Court reviewed the docket and discovered the pleadings were not yet closed. As such, by *Order of Court* under date of August 13, 2021, the Court struck the Respondent's *Motion for Summary Judgment* and canceled the argument, granting the Petitioner permission to refile her *Motion for Summary Judgment* following the close of the pleadings; the Court did not set a new deadline for the filing of dispositive motions. On or about September 15, 2021, the Respondent filed her *Reply to New Matter*, and, on October 7, 2021, refiled her *Motion for Summary Judgment*. As such, the Court does not find the Respondent filed her *Motion for Summary Judgment* for the purpose of delaying trial in this matter, and the Petitioner's request to deny the *Motion for Summary Judgment* for that reason is DENIED.

With regard to the Respondent's *Motion for Summary Judgment*, the General Durable Power of Attorney at issue was executed by the now-deceased Willard Gritser on or about October 17, 2006. As a preliminary matter, the Court will address the applicability of 20 Pa.C.S.A. § 5601.4(a)(1) and 20 Pa.C.S.A. § 5601.4(a)(4) to the General Durable Power of Attorney, as "the interpretation and application of a statute is a question of law for the court to decide." *Commonwealth v. J.C.*, 199 A.3d 394, 398 (Pa. Super. Ct. 2018) (citing *C.B. v. J.B.*, 65 A.3d 946, 951 (Pa. Super. 2013)). The Act of July 2, 2014, P.L. 855, No. 95, Section 9, provides:

Section 9. The following shall apply:

(1) **Except as provided by this section**, the provisions of this act apply to powers of attorney created before, on or after the respective effective dates of such provisions, but do not apply to the acts or omissions of agents, or third parties presented with instructions by agents, that occur before such respective effective dates.

(2) **Except as provided by this section**, the provisions of this act apply to judicial proceedings concerning a power of attorney commenced before, on or after the respective effective dates of such provisions, unless the court finds that application of a provision of this act would substantially interfere with the effective conduct of the judicial proceeding or prejudice the rights of a party, in which case that provision does not apply and the superseded law applies.

(3) **The amendment, addition or repeal of 20 Pa.C.S. §§** 5601(b), (c), (d) and (e.2), 5601.2, **5601.4**, 5602(a)(5) and (17) and 5603 **apply only to powers of attorney created on or after the effective dates of those provisions.**

(4) The amendment of 20 Pa.C.S. §§ 5601(f) and 5608 shall apply retroactively to acts performed after December 15, 1992, and to judicial proceedings commenced prior to the effective dates of those provisions.

(5) In interpreting and applying the amendment or addition of 20 Pa.C.S. §§ 5601(f), 5608, 5608.1, 5608.2 and 5611, a court shall give due consideration of the intent of the General Assembly to reverse the interpretation of 20 Pa.C.S. § 5608 as set forth in Teresa M. Vine v. Commonwealth of Pennsylvania, State Employees' Retirement Board, 9 A.3d 1150 (Pa. 2010).

Section 9 of 2014, Jul. 2, P.L. 855, No. 95 (emphasis added).[1] Pursuant to Section 10 of this Act, "This act shall take effect as follows:

---

[1] 2014 Act 95 - PA General Assembly (state.pa.us)

4

(1) The amendment or addition of 20 Pa.C.S. §§ 5601(f), 5608, 5608.1, 5608.2, 5611 and 5612 shall take effect immediately.

(2) This section shall take effect immediately.

(3) The remainder of this act shall take effect January 1, 2015."

Section 10 of 2014, Jul. 2, P.L. 855, No. 95. Accordingly, 20 Pa.C.S.A. §§ 5601.4(a)(1) and (4) became effective on January 1, 2015. Per the plain language of Section 9, subsection 3 of the Act, the provisions of 20 Pa.C.S.A. §§ 5601.4(a)(1) and (4) are inapplicable to the Court's interpretation and analysis of the powers granted to Amina Loucas by Willard Charles in his October 17, 2006, General Durable Power of Attorney, as it was drafted and executed prior to the effective dates of those provisions. Therefore, the Court must be guided by the language of the Power of Attorney statute in effect at the time the General Durable Power of Attorney was executed in order to interpret the powers granted to the Respondent.

In this regard, the statute in effect on October 17, 2006, was the Act of Oct. 12, 1999, P.L. 422, No. 39, Section 10, (hereinafter, at times, "the Act"), which provides the following:

Section 10. Sections 5602, 5603, 5604, 5605, 5606, 5607 and 5608 of Title 20 are amended to read:
§ 5602. Form of power of attorney.
(a) Specification of powers.--**A principal may, by inclusion of the language quoted in any of the following paragraphs or by inclusion of other language showing a similar intent on the part of the principal,** empower [his attorney-in-fact] an agent to do any or all of the following, each of which is defined in section 5603 (relating to implementation of power of attorney):
(1) [Either:
(i) "to make gifts"; or
(ii) "to] **To** make limited gifts."
(2) "To create a trust for my benefit."
(3) "To make additions to an existing trust for my benefit."
(4) "To claim an elective share of the estate of my deceased spouse."
(5) "To disclaim any interest in property."
(6) "To renounce fiduciary positions."
(7) "To withdraw and receive the income or corpus of a trust."

https://www.legis.state.pa.us/cfdocs/Legis/LI/uconsCheck.cfm?txtType=HTM&yr=2014&sessInd=0&smthLwInd=0&act=95

5

(8) "To authorize my admission to a medical, nursing, residential or similar facility and to enter into agreements for my care."
(9) "To authorize medical and surgical procedures."
(10) "To engage in real property transactions."
(11) "To engage in tangible personal property transactions."
(12) "To engage in stock, bond and other securities transactions."
(13) "To engage in commodity and option transactions."
(14) "To engage in banking and financial transactions."
(15) "To borrow money."
(16) "To enter safe deposit boxes."
(17) "To engage in insurance transactions."
(18) "To engage in retirement plan transactions."
(19) "To handle interests in estates and trusts."
(20) "To pursue claims and litigation."
(21) "To receive government benefits."
(22) "To pursue tax matters."
(23) "To make an anatomical gift of all or part of my body."

Section 10 of Oct. 12, 1999, P.L. 422, No. 39, Section 10, §5602 (second emphasis added).[2]

These powers are further defined in the above-referenced Act in section 5603, and the relevant definitions will be discussed subsequently. Finally § 5603(v) of the Act, Powers generally, provides, "All powers described in this section shall be exercisable with respect to any matter in which the principal is in any way interested at the giving of the power of attorney **or thereafter** and whether arising in this Commonwealth or elsewhere." The Act of Oct. 12, 1999, P.L. 422, No. 39, Section 10, § 5603(v) (emphasis added).

Turning to the October 17, 2006, General Durable Power of Attorney of Willard Gritser, the provisions therein contain broad language whereby Willard Gritser empowers his Agent "to do and perform all matters and things," including the power to "make, execute, acknowledge and deliver all contracts, checks, orders, deeds, writings, assurances and instruments…make bank deposits or withdrawals in or from any bank or banking institution; open or close any bank account or bank accounts in my name or over which I have control with any banking

[2] 1999 Act 39 - PA General Assembly (state.pa.us)
https://www.legis.state.pa.us/cfdocs/legis/li/uconsCheck.cfm?yr=1999&sessInd=0&act=39

6

institution...negotiate, sell or convert to cash any stocks, bonds or certificates of deposit which may be owned by me...and to [sic] any and all things which may be requisite or proper to effectuate any matter or thing appertaining or belonging to me with the same powers, and to all intents and purposes with the same validity as I could, if personally present...." This language is not ambiguous.

With regard to the utilization of the broad empowerment, "to do and perform all matters and things," and "to [sic] any and all things which may be requisite or proper to effectuate any matter or thing appertaining or belonging to me with the same powers, and to all intents and purposes with the same validity as I could, if personally present...", the applicable law recognizes that, "Where the [Power of Attorney] authorization grants specific powers and also a general power to do all things, the general power will be confined to the specific powers enumerated." *Zidek v. Forbes Nat. Bank*, 48 A.2d 103, 105 (Pa. Super. 1946) (citing *Mott v. Kaldes*, 135 A. 764 (Pa.)). Accordingly, the specific powers granted to the Respondent must be interpreted broadly in light of the inclusion of the general power language.

Reading broadly the specific powers enumerated in the General Durable Power of Attorney, the Court is satisfied that the Decedent empowered his Agent, "To engage in banking and financial transactions." Pursuant to subsection (m) of section 5603 of The Act of Oct. 12, 1999, P.L. 422, No. 39, Section 10, Implementation of Power of Attorney, the power to engage in banking and financial transactions is as follows:

A power to "engage in banking and financial transactions" shall mean that the [attorney-in-fact] **agent** may:
(1) Sign checks, drafts, orders, notes, bills of exchange and other instruments ("items") or otherwise make withdrawals from checking, savings, transaction, deposit, loan or other accounts in the name of the principal and endorse items payable to the principal and receive the proceeds in cash or otherwise.
**(2) Open and close such accounts in the name of the principal, purchase and redeem savings certificates, certificates of deposit or similar**

7

**instruments in the name of the principal and execute and deliver receipts for any funds withdrawn or certificates redeemed.**

(3) Deposit any funds received for the principal in accounts of the principal.

**(4) Do all acts regarding checking, savings, transaction, deposit, loan or other accounts, savings certificates, certificates of deposit or similar instruments, the same as the principal could do if personally present.**

(5) Sign any tax information or reporting form required by Federal, State or local taxing authorities, including, but not limited to, any Form W-9 or similar form.

(6) In general, transact any business with a banking or financial institution that the principal could if present.

The Act of Oct. 12, 1999, P.L. 422, No. 39, Section 10, § 5603(m) (second and third emphases added). Thus, the specific power given to the Respondent to "engage in banking and financial transactions" alone gave Willard Gritser's Agent the power to redeem the Certificates of Deposit. However, despite Willard Gritser having already given his Agent the right to redeem the Certificates of Deposit through the power to engage in banking and financial transactions, he added additional language expressly granting his Agent the right to negotiate, sell or convert to cash his Certificates of Deposit. The language of the General Durable Power of Attorney clearly demonstrates the Principal's intent to authorize his Agent to broadly manage the Certificates of Deposit, which includes the power to convert them to cash.

In view of the Respondent's power to redeem or convert to cash the Certificates of Deposit, and in light of the fact that these Certificates of Deposit were also Totten Trusts, the broad language utilized in the October 17, 2006, General Durable Power of Attorney therefore gave the Respondent the power to withdraw and receive the income or corpus of these specific trusts by closing the accounts, and thereby remove the Petitioner as a beneficiary thereof.

As such, the Respondent's, Amina Loucas, Executrix of the Estate of Willard Charles Gritser, Deceased, *Motion for Summary Judgment* is GRANTED with regard to her argument that she was empowered to redeem or convert to cash the Certificates of Deposit pursuant to

Willard Gritser's General Durable Power of Attorney under date of October 17, 2006, and to thereafter place them in an account solely in the name of Willard Gritser.

However, genuine issues of material fact exist with regard to the Petitioner's claims for breach of fiduciary duty and bad faith. Title 20 Pa.C.S.A. §§ 5601.3(a), (b)(2), and (b)(6) apply to all powers of attorney, regardless of when drafted and executed. Presently, questions of fact exist with regard to whether the Respondent failed to act in accordance with the reasonable expectations of the Decedent in violation of 20 Pa.C.S.A. § 5601.3(a), whether she created a conflict of interest by closing the Certificates of Deposit in violation of 20 Pa.C.S.A. § 5601.3(b)(2), and whether she violated her duty to preserve the known estate plan of the Decedent as required by 20 Pa.C.S.A. § 5601.3(b)(6).

As such, in all other respects, the Respondent's, Amina Loucas, Executrix of the Estate of Willard Charles Gritser, Deceased, *Motion for Summary Judgment* is DENIED.

Wherefore, the Court enters the following:

9